## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN W. HOOG; and REBECCA HOOG, | |
| Plaintiff, | Case No.: CIV-20-00272-JD |
| v. | |
| DOMETIC CORPORATION, a Delaware corporation, | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF WALTER OLIVEAUX

Plaintiffs, Kevin Hoog and Rebecca Hoog (hereinafter referred to collectively as "Plaintiffs" or "Hoog") hereby offers this reply to Defendant Dometic's Opposition to Plaintiffs' Motion to Exclude the Opinions of Walter Oliveaux (ECF No. 112) move for an order excluding the expert report and proposed testimony of Walter Oliveaux pursuant to Federal Rule of Evidence ("Rule") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[1]

## ARGUMENT

## I.

## MR. OLIVEAUX CANNOT RELY ON THE OPINIONS OF OTHERS TO SATISFY HIS LACK OF QUALIFICATIONS UNDER *DAUBERT*.

Dometic concedes that Mr. Oliveaux does not himself have the requisite education, training, experience or expertise to offer reliable opinions on the design, operation and failure of gas absorption refrigerators. Still, Dometic insists that his testimony and opinions regarding Dometic-branded gas absorption refrigerators in

general, and the Hoog Refrigerator in particular, should nevertheless be admitted because he relied on the knowledge and expertise of other experts to fill in his knowledge gap.

While it is entirely proper for one expert to rely on the knowledge and expertise of another expert[3],  it is axiomatic that the experts relied upon have to possess the requisite education, experience, training and expertise themselves. Here, Dometic claims that his report was based on the knowledge of two other individuals – Richard Baron and Jamie Petty-Galis.   However, neither one of them have any more experience and expertise on the issues of boiler design, boiler operation and boiler failure than Mr. Oliveaux – a fact that Dometic and their attorneys are very well aware of.[4]

In that Mr. Oliveaux concedes that he lacks the qualifications to testify or offer opinions on gas absorption refrigerator boiler design, operation and failure, and cannot fill in that gap through other experts who share the same lack of qualifications in the relevant subject matter, Mr. Oliveaux's testimony and

---

[3]   See, e.g., plaintiffs' fire origin and cause expert – Mark Howell – reliance on AEGI to forensically examine the remains of the Hoog Refrigerator

[4]   Dr. Baron was Dometic's retained expert in both the Papasan case and the present matter. He consistently testified at deposition that he had limited knowledge of gas absorption refrigerators, and was not in any way an expert in gas absorption technology, boiler design, boiler operation and boiler failure.   See, Ex 1 [Baron Depo – Hoog], at 11:4 – 13:3;  Ex. 2 [Baron Depo – Papasan], at 287:18 – 289:11.   Ms. Petty-Galis is a metallurgist that has been retained as an expert in refrigerator fire litigation involving Dometic' competitor – Norcold. Her limited understanding of gas absorption refrigerator technology in Norcold refrigerators does not begin to fill the information gap for Mr. Oliveaux's assertions.   See, e.g. Ex. 3 [Petty-Galis Depo – Reis], at 44:23 – 51:1.

opinions regarding gas absorption refrigerator boiler design, operation and failure must  be excluded under *Daubert.*

## II.

### MR. OLIVEAUX'S ORIGIN OPINIONS ARE INEXTRICABLY ENTWINED WITH HIS CAUSE OPINIONS, REQUIRING THAT HIS TESTIMONY ON ORIGIN AND CAUSE BOTH BE EXCLUDED.

In an effort to salvage something of Mr. Oliveaux's testimony, Dometic asserts that while his opinions regarding the *origin* of the Hoog Fire might be excluded, that does not mean that his testimony and opinions regarding the *cause* of the Hoog Fire should be excluded as well.   This argument is more than a little disingenuous.   As Mr. Oliveaux is fond of saying, a fire origin and cause expert cannot determine cause without first determining origin.[5]   The two concepts are inextricably linked.

For example, Mr. Oliveaux's opinion that the Hoog Refrigerator must be conclusively ruled out as the cause of the fire is necessarily based on his opinion that the fire started in the woodpile outside the Hoog Shop.   All of his prospective testimony and opinions regarding how the fire moved from the outside of the Hoog Shop to the inside is based on his opinion that the fire originated in the woodpile, as is his testimony and opinion that the physical damage to the Hoog Refrigerator cooling unit was the result of an "attacking fire", as opposed to a fire caused by the

---

[5]   See, e.g. Ex. 4 [Oliveaux Expert Report Excerpt – RCI], at pages 21 – 22.

demonstrated leak in the Hoog Refrigerator cooling unit boiler tube.   It is simply not possible to separate Mr. Oliveaux's fire origin testimony from his fire cause testimony, without asking the jury to speculate where the "attacking fire" came from in the first place.

The underlying purpose of expert testimony is to assist the jury in understanding the evidence and determining the facts.   Where the proffered expert testimony is misleading or incomplete, or asks the jury to speculate, it is not helpful to the jury and must be excluded under *Daubert*.

## III.

### MR. OLIVEAUX'S TESTIMONY REGARDING THE ORIGIN AND CAUSE OF THE HOOG FIRE IS UNRELIABLE AND MUST BE EXCLUDED.

Contrary to Dometic's assertions, plaintiffs do not challenge Mr. Oliveaux's opinions and conclusions, but rather the methodology used to arrive at them, namely, his failure to document or investigate the woodpile he claims was the origin of the Hoog fire.   Dometic – and apparently Mr. Oliveaux – concede that the failure to investigate the woodpile is a violation of NFPA 921 that precludes any determination of fire cause.[6]   Plaintiffs challenge is therefore not to conclusions/opinions drawn from the application of a reliable methodology, but

---

[6]   See, ECF 112, at page 12, 15, ft. 7..

rather to a flawed and unreliable methodology that cannot support the conclusions/opinions reached.

While Dometic spends a lot of their brief outlining various steps Mr. Oliveaux took to investigate the Hoog fire scene, they pay scant attention to the one crucial methodological step that plaintiffs challenge, i.e. his failure to document or investigate the woodpile he claims was the origin of the fire.   Rather, they cite to the bogus and factually unsupported spoliation claims Mr. Oliveaux asserted *after* he was caught during deposition in an outright lie.

In evaluating Mr. Oliveaux's deposition testimony, it should be noted that he voluntarily inserted into his responses to various questions the claim that the woodpile was not present when he participated in the joint fire scene inspection on June 15, 2018.[7]   He was given every opportunity to correct his testimony, or clear up any ambiguity, exemplified by the following exchange:

Q.   Okay. And -- and is it your testimony, under oath, that when you examined the scene on June 15th, 2018, there was no evidence of the wood pile on the back -- on the north side of the building?

A.   I don't -- no. There was no evidence of the wood pile.[8]

---

7   See, Ex 5 [Oliveaux Depo – Hoog], at 84:2 – 21;  104:5 – 105:22; 106:12 – 107:12; 110:7 – 112:1; 124:23 – 125:9.

8   See, Ex. 5 [Oliveaux Depo – Hoog], at 137:13 – 18.

Mr. Oliveaux is an experienced deposition witness, and there can be no doubt that his testimony regarding his observations was not the result of mistake or inadvertence.   He meant to say what he said, under oath.   It was only after he was confronted with undisputable evidence that his sworn testimony was false that he attempted to modify it by blaming the plaintiffs – and their attorneys – for something there was no evidence for, i.e. that the scene had been "cleaned up" after the first scene inspection, contrary to his directives.[9]

The essence of the Scientific Method incorporated into NFPA 921 is the use of a reliable methodology to arrive at a reliable conclusion as to the origin and cause of a fire.   Failure to investigate a hypothesis is a clear violation of the Scientific Method, and requires Mr. Oliveaux's fire origin and cause opinions to be excluded.

## IV.

## MR. OLIVEAUX'S TESTIMONY AND OPINIONS ARE SUFFICIENTLY COMPROMISED BY BIAS TO JUSTIFY THEIR EXCLUSION.

Dometic repeatedly claims that Mr. Oliveaux has completed over 1,000 fire origin and cause investigations involving gas absorption refrigerators.[10]   This is another demonstrably false statement regarding Mr. Oliveaux.   The issue of Mr.

---

[9]   See, Ex. 8 [Oliveaux Depo – Hoog], at 137:22 – 144:16.

[10]   See, e.g. ECF No. 112, at pages 1, 3, 5.

Oliveaux's relationship with Dometic came up during his deposition, wherein he cleared up the "1,000 investigation" verbiage by clarifying that the 1,000 included his fire investigations for Dometic, and was not meant to convey the idea that he had conducted 1,000 gas absorption refrigerator fires.[11]   However, when asked the usual question of "How many times have you conducted a gas absorption refrigerator fire origin and cause investigation for Dometic?", he was instructed not to answer any questions past confirming at least 190.

Bias of an expert witness is not usually a ground, in and of itself, to exclude testimony and opinions, but rather is left to the jury to decide what weight to give it.   However, plaintiffs submit that at some point, bias of an expert witness – manifested in intentional obfuscation and outright perjury - can become so extreme that it crosses the line and transforms expert testimony that might be viewed as merely "shaky" into testimony that is impermissibly corrupt and inadmissible.

Plaintiffs' submit that Mr. Oliveaux's testimony crosses that line.   It is undisputed that Mr. Oliveaux's fire origin and cause testimony and opinions are based on patently false claims regarding a material issue, i.e. the origin and cause of the Hoog Fire.   It is also clear that Mr. Oliveaux is a creature of Dometic and – when it comes to investigating fire claims involving Dometic gas absorption refrigerators – is not an independent fire investigator engaged in an unbiased

---

[11]   See, Ex. 8 [Oliveaux Depo – Hoog], at 134:5 – 136:7.

search for the truth.   On the contrary, Mr. Oliveaux has demonstrated that his bias towards Dometic is so extreme that he will literally commit perjury in service of his corporate client, while falsely accusing the plaintiffs – and their attorneys – of spoliation to boot. [12]

      Mr. Oliveaux's testimony and opinions are exactly the kind of unsupported and compromised testimony the Court is obligated to scrutinize and exclude under *Daubert*.   The Court should therefore exercise its gatekeeping role and exclude Mr. Oliveaux's testimony and opinions from this case in their entirety.

## RELIEF REQUESTED

      For the reasons set forth above, and in plaintiffs' initial brief in support of their Daubert challenge (ECF No. 102), plaintiffs' request that the Court enter an order excluding the report and testimony of Mr. Oliveaux in its entirety.

DATED:    2/3/23        LAW OFFICES OF TERRENCE A. BEARD

                        By:  */s/ Terrence A. Beard*
                            Terrence A. Beard (Pro Hac Vice)
                            P.O. Box 1599
                            Sutter Creek, CA  95685
                            Telephone: (925) 778-1060
                            Email: *TBeard1053@aol.com*

                            -And-

                            Travis P. Brown, OBA #20636
                            Zachary J. Foster, OBA #30554

---

[12]  See, ft. 8, 9, 10, *supra*.

MAHAFFEY & GORE, P.C.
300 N.E. 1st Street
Oklahoma City, OK 73104
Telephone: (405) 236-0478
Facsimile: (405) 236-1840
Email: *tbrown@mahaffeygore.com*
Email: *zfoster@mahaffeygore.com*

COUNSEL FOR PLAINTIFFS

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2023, I filed the above-entitled document with the Clerk of the Court for the Western District of Oklahoma using the CM/ECF electronic filing system, which provided service on the following counsel of record:

Keith S. Yamaguchi (Admitted PHV)
KMA ZUCKERT LLC
200 West Madison Street, 16th Floor
Chicago, Illinois 60606
T: (312) 345-3000 F: (312) 345-3119
kyamaguchi@kmazuckert.com (Primary)
ebarrera@kmazuckert.com (Tertiary)

Michel W. Brewer (Okla. Bar No. 11769)
Jeffrey D. Scott (Okla. Bar No. 32115)
Hiltgen & Brewer, P.C.
9505 North Kelley Avenue
Oklahoma City, Oklahoma 73131

T: (405) 605-9000 F: (405) 605-9010
mbrewer@hbokc.law (Primary)
jscott@hbokc.law (Secondary)
kglazener@hbokc.law (Tertiary)

Erica Rutner
Moore & Lee
501 East Las Olas Blvd. # 200
Fort Lauderdale, FL 33301
703-940-3763
Fax: 703-506-2051
Email:erutner@mooreandlee.com

Attorneys for Defendant *Dometic Corporation*

/s/ Terrence A. Beard
Terrence A. Beard