**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

KEVIN W. HOOG and )
REBECCA HOOG, )
)
        Plaintiffs, )
)
v. )    Case No. CIV-20-00272-JD
)
DOMETIC CORPORATION, )
a Delaware corporation, )
)
        Defendant. )

## ORDER

Before the Court is Plaintiffs' First Amended Motion and Supporting Brief for

Order Compelling Dometic to Remove Confidentiality Designations on Certain

Documents Produced in Discovery ("Motion") [Doc. No. 57].[1] Defendant Dometic

Corporation ("Dometic") filed a response in opposition [Doc. No. 60], and Plaintiffs filed

a reply [Doc. No. 61]. For the reasons stated below, the Court grants in part and denies in

part the Motion.

## I.   BACKGROUND

At the outset, the Court notes that this case follows significant discovery

production in two putative class actions—*Papasan, et al. v. Dometic Corporation*, Case

No. 16-cv-02117-HSG (N.D. Cal.) ("*Papasan I*") and *Papasan, et al. v. Dometic*

---

[1] The Court also reviewed Terrence Beard's Amended Declaration [Doc. No. 58] in support of the Motion; the documents at issue, which were submitted to the Court for *in camera* review pursuant to the Court's Order entered September 27, 2022 [Doc. No. 81]; and Dometic's Notice of Supplemental Authority Concerning Buc Testing Materials Subject to Plaintiffs' Motions to Compel, ECF No. 57 and 87 [Doc. No. 129].

*Corporation*, Case No. 1:16-cv-22482-RNS (S.D. Fla.) ("*Papasan II*")—both of which were subject to stipulated confidentiality and protective orders and involved the same lead Plaintiffs' counsel, Terrence Beard. Prior to the instant case, Plaintiffs' counsel did not challenge any of Dometic's confidentiality designations in either *Papasan I* or *Papasan II*.[2] Additionally, the Court notes that nothing about this Order impacts the decisions made in other litigation involving Dometic, and that the Court views its decision and analysis through the lens of the Protective Order [Doc. No. 42] in this case and governing case law.

A.    **Plaintiffs' Claims**

In this action, Plaintiffs seek money damages following a fire on March 30, 2018, which they allege was caused by a defective NDR 1292[3] gas absorption refrigerator (the "Refrigerator") manufactured by Dometic. *See* Second Am. Compl. [Doc. No. 27] at ¶ 1. The Refrigerator was installed as original equipment in Plaintiffs' 2007 Newmar Dutch

---

[2] The Court exercises its discretion to take judicial notice of the publicly filed records and judicial dockets in the consolidated class action and other related cases against Dometic for purposes of this Motion. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining the court may take judicial notice of publicly filed records from other courts concerning matters that bear directly upon the disposition of the case at hand). As an initial matter, the Court would note that Plaintiffs cannot challenge rulings in another case through this case or attempt to undo prior or ongoing litigation through this action. With that said, the Court has fully examined the submissions and the showing made by Dometic and notes that the Court's analysis and conclusions on the confidentiality designations relate to this case only.

[3] *See* Pls.' Mot. to Compel [Doc. No 87 at 2 n.2], which indicates that since the filing of Plaintiffs' Second Amended Complaint and Dometic's Answer [Doc. No. 37], Dometic has stipulated that Plaintiffs' refrigerator was a Dometic Model NDR 1292, Serial Number 65100048, installed as original equipment in Plaintiffs' motorhome or RV.

Star 4320 Class A motorhome (the "RV"). *Id*. Plaintiffs purchased the RV from a private party on or about October 26, 2011. *Id*. ¶ 38. Plaintiffs allege that between October 26, 2011 and March 30, 2018, they used the RV and Refrigerator with no issues. *Id.* ¶ 39.

Plaintiffs kept the RV—along with their other two vehicles—inside a custom built 5,000 square foot shop on their property in Arcadia, Oklahoma. *Id.* ¶ 40. The shop also included a fully equipped apartment with Plaintiffs' personal collection of hand-signed NASCAR memorabilia and their gun collection. *Id.*

On March 30, 2018, Plaintiffs left their property to meet friends for dinner around 8:00 p.m. *Id.* ¶ 41. Inside the shop was their RV, which Plaintiffs allege was plugged into shore power, and the Refrigerator was turned on. *Id.* Around 10:30 p.m., Plaintiffs received calls on their cell phones from neighbors and the fire department that the shop was on fire. *Id.* Plaintiffs allege that the fire was eventually extinguished by the Edmond Fire Department around 2:30 a.m. on March 31, 2018. *Id.* The fire destroyed the shop, Plaintiffs' vehicles, the RV, and the contents of the shop. *See id.* ¶¶ 40, 42.

Dometic initiated recalls of select models of its gas absorption refrigerators through the National Highway Traffic Safety Administration ("NHTSA") in 2006 and 2008. *Id*. ¶ 31. It is undisputed that Plaintiffs' model Refrigerator was never recalled. *See* [Doc. No. 107 ¶ 18; Doc. No. 121 ¶ 18]. Plaintiffs allege that the Model NDR 1292 refrigerators share common design defects with the recalled models and that "Dometic has actual knowledge that these model refrigerators continue to fail and cause fires because of the defects . . . ." Second Am. Compl. [Doc. No. 27] ¶ 34.

Plaintiffs contend that despite "Dometic's actual knowledge of the real-world performance of [its] product, Dometic never stopped selling and placing its dangerously defective refrigerators into the stream of commerce," nor paused production and sales to modify the refrigerators "to operate safely." *Id.* ¶ 30. As a result, Plaintiffs allege that between 1997 and 2017, Dometic sold more than 3 million defective gas absorption refrigerators in the United States. *Id.*

Following the Court's Order [Doc. No. 36] granting in part and denying in part Dometic's Partial Motion to Dismiss [Doc. No. 29], Plaintiffs' remaining claims in their Second Amended Complaint include Count 1, strict liability/design defect; Count 2, strict liability/failure to warn; Count 3, negligence; Count 4, negligence/post-sale duty to warn; Count 5, negligence per se; Count 6, negligence/post-sale duty to conduct adequate recall/retrofit; and Count 8, to the extent it alleges unfair trade practices under the Oklahoma Consumer Protection Act.

**B.    Confidentiality Designations at Issue**

Plaintiffs request that the Court order Dometic to remove the confidentiality designations on five documents and provide Plaintiffs with clean copies of the documents within five days of the Court's ruling. The five documents at issue are: Dr. Elizabeth Buc's January 24, 2019 deposition transcript in *Papasan II* and four exhibits to Patrick McConnell's January 19, 2019 deposition in the same lawsuit, which includes two scripts used by Dometic's Refrigerator Retail Recall Line (Exhibit 18); an October 6, 2009 report to Dometic's parent company's board of directors regarding the 2006 and 2008 recalls (Exhibit 9); a compilation of incident files maintained by Dometic regarding fires

in their gas absorption refrigerators (Exhibit 14); and a November 2006 email string between McConnell and Kenth Bengtsson, Carl Lindhagen, and Lars Johanssen of Dometic's affiliate companies in Sweden regarding Dr. Buc's testing (Exhibit 19). Motion at 4–6. Plaintiff asserts that Dometic has over-designated Dr. Buc's deposition and the other referenced documents as "confidential."

After Plaintiffs filed their Motion, Dometic agreed to de-designate portions of Dr. Buc's deposition transcript and portions of Exhibit 14 to McConnell's deposition. [Doc. No. 60 at 6 n.2 and 11 n.5; Doc. No. 60-3]. Dometic contends that its remaining confidentiality designations are appropriate, and that the documents at issue contain proprietary, commercially sensitive information. Plaintiffs disagree.

## C.    Protective Order

Under the Protective Order in this case, "confidential information" is broadly defined. [Doc. No. 42 ¶¶ 1.b. and 1.c.]. "[A]ny Supplying Party shall have the right to designate as confidential any document or other information it produces or provides and any testimony it gives in this Proceeding that it and its counsel believe in good faith discloses a trade secret or other confidential research, development, or commercial information contemplated under Rule 26(c) of the Federal Rules of Civil Procedure." *Id.* ¶ 1.b. Any party to the proceeding "may also designate as confidential any information or testimony supplied by a non-party if the party transmitted the information to the non-party under an agreement or obligation that it would remain confidential." *Id.*

The Protective Order also includes the following provision regarding challenges to a confidential designation:

5

> A party may, at any time, make a good-faith challenge to the propriety of a Confidential Information designation. The objecting party shall first consult with the designating party to attempt to resolve their differences. If the parties are unable to reach an accord as to the proper designation of the material, the objecting party may move the Court for a ruling that the material shall not be so designated, subject to compliance with Federal Rules of Civil Procedure and Local Court Rules on discovery motions, including a certification in the motion that the parties have met and conferred in good faith on the issue. If such a motion is made, the designating party has the burden of establishing that the designation is proper. If after the parties' good faith-conference no motion is made, the material will retain its original designation. Any documents or other materials that have been designated as Confidential Information shall be treated as Confidential Information until such time as the Court rules on any objection.

*Id*. ¶ 6. Additionally, it includes a procedure for filing confidential material with the Court under seal. *See id.* ¶ 5.

"Confidential Information may be further designated as 'ATTORNEYS' EYES ONLY' material."[4] *Id.* ¶ 4.a. Such designation, however, "should be used extremely sparingly and is reserved for highly sensitive information that constitutes proprietary, technical, or other unusually sensitive information that the producing party maintains as confidential in the normal course of its operations." *Id.* ¶ 4.b.

In response to Plaintiffs' requests for production in this case, Dometic asserts that it designated some of the documents confidential and/or attorneys' eyes only pursuant to

---

[4] "ATTORNEYS' EYES ONLY" is defined under the Protective Order as information or other materials that "the designating party believes in good faith are not generally known to others and which the designating party (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence, or (ii) believes in good faith is sensitive and protected by a right of privacy under federal law, state law, or any other applicable privilege or right related to confidentiality or privacy that warrants review by attorneys only." [Doc. No. 42 ¶ 4.b.].

the terms of the Protective Order and consistent with their confidential designations in *Papasan I* and *Papasan II*. [Doc. No. 60 at 2]; *see also* [*Papasan I*, Doc. No. 52, Stipulated Protective Order] and [*Papasan II*, Doc. No. 18, Stipulated Confidentiality and Protective Order].

## II.   <u>ANALYSIS</u>

Here, Dometic, as the designating party, "has the burden of establishing that the designation[s] [are] proper" under the Protective Order. [Doc. No. 42 at 10]. Under Federal Rule of Civil Procedure 26(c)(1)(G), a "court may, for good cause, issue an order to protect a party . . . [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "As with most . . . discovery privileges recognized by law, 'there is no absolute privilege for trade secrets and similar confidential information.'" *Fed. Open Mkt. Comm. Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (quoting 8 C. Wright & A. Miller, Federal Practice & Procedure § 2043, p. 300 (1970)). Additionally, courts do not give "trade secrets automatic and complete immunity against disclosure," but rather, they "weigh[] their claim to privacy against the need for disclosure" on a case-by-case basis. *Id.*

Under Tenth Circuit law, a party seeking protection under Rule 26(c)(1) must "'first establish that the information sought is a trade secret [or other confidential research, development, or commercial information] and then demonstrate that its disclosure might be harmful.'" *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (quoting *Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d

323, 325 (10th Cir. 1981)). "If the party makes such a showing, 'the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets [or other confidential and commercial information] is relevant and necessary to the action.'" *Id.* (quoting *Centurion*, 665 F.2d at 325). In making this consideration, the Court should balance the need for the information "against the claim of injury resulting from disclosure." *Centurion*, 665 F.2d at 325.

The trial court has "broad discretion . . . to decide . . . what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Trial courts retain this broad discretion because they are "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Id.* "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders [and decide what degree of protection is required]." *See id.*

"Although there is no federal discovery privilege for trade secrets, state law governs privileges in civil diversity cases." *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 662 (D. Kan. 2015)[5] (internal footnote omitted) (citing *Centurion*, 665 F.2d 325). As this is a diversity case and the Court sits in Oklahoma, the Court looks to Oklahoma law to determine whether any privilege applies.

---

[5] Although federal district courts do not make binding precedent, because discovery issues are typically decided at the trial court level, the Court may look to other district court orders as persuasive. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2020) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (internal quotation marks and citation omitted)).

Oklahoma recognizes a trade secret privilege. *See* Okla. Stat. tit. 12, § 2508. "A

person has a privilege . . . to refuse to disclose and to prevent other persons from

disclosing a trade secret owned by the person, if the allowance of the privilege will not

tend to conceal fraud or otherwise work injustice." *Id.* A "trade secret" is defined as:

> [I]nformation, including a formula, pattern, compilation, program, device,
> method, technique or process, that:
>
> a. derives independent economic value, actual or potential, from not being
>    generally known to, and not being readily ascertainable by proper means
>    by, other persons who can obtain economic value from its disclosure or
>    use, and
>
> b. is the subject of efforts that are reasonable under the circumstances to
>    maintain its secrecy.

Okla. Stat. tit. 78, § 86.[6] On its face, Rule 26(c)(1)(G) goes beyond trade secrets to

provide protection for "other confidential research, development, or commercial

information." *See* Fed. R. Civ. P. 26(c)(1)(G).

### A.      Dr. Buc's January 24, 2019 Deposition Testimony

Plaintiffs challenge Dometic's confidentiality designations from select portions of

Dr. Buc's 2019 deposition transcript taken in *Papasan II*. Dr. Buc was an outside

---

[6] The Oklahoma Supreme Court has adopted six factors from the Restatement of Torts, § 757, to help determine whether information is a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and to the company's competitors; (5) the amount of effort or money expended by the company in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Amoco Prod. Co. v. Lindley*, 609 P.2d 733, 743 (Okla. 1980) (citing Restatement (First) of Torts § 757 cmt. b).

consultant hired by Dometic's attorneys in 2005 to conduct a series of tests on certain models of Dometic gas absorption refrigerators. *See* McConnell's Decl.[7] [Doc. No. 60-1 ¶ 3]; *see also* Dr. Buc's Decl. [Doc. No. 58-2]. Dometic has submitted Mr. McConnell's Declaration as evidentiary support for its designations.

According to McConnell, Dr. Buc "was hired specifically because of lawsuits and other claims alleging fires involving Dometic-branded refrigerators, and her testing was solicited solely for purposes of existing and anticipated litigation." [Doc. No. 60-1 ¶ 3].

Plaintiffs assert that "Dometic has designated large swaths of [Dr. Buc's deposition transcript] confidential, notwithstanding the fact" that her results were "publicly disclosed by Dometic" to the NHTSA and used as the basis for the 2006 and 2008 recalls. Motion at 5. Dometic and Mr. McConnell assert that although "the existence of her testing was disclosed to the [NHTSA] in connection with" the recalls, "Dometic has at all times maintained privilege over the underlying testing documents created by Dr. Buc and relevant attorney-client correspondence related thereto." [Doc. No. 60-1 ¶ 3]. They further assert that Dometic has never produced, nor been ordered to produce, Dr. Buc's underlying testing materials in any litigation. *See id.*; *see also* [Doc. No. 58-2 ¶¶ 2–6].

According to McConnell, "Dometic invested substantial time, money and effort into developing the protocol for the aforementioned testing and conducting the testing

---

[7] According to his Declaration, Mr. McConnell was responsible for product safety for Dometic-branded gas absorption refrigerators sold in the United States from the early 2000s until his retirement in 2018. [Doc. No. 60-1 ¶ 1]. Since his retirement, he has served as a consultant for Dometic. *See id.*

with the assistance of Dr. Buc." [Doc. No. 60-1 ¶ 5]. He further asserts that the "testing cannot be readily duplicated by Dometic's competitors," and that "public production" of the testing details would "force Dometic to disclose to its competitors the results of its proprietary investigation and effort and could provide the foundation for [its] competitors to duplicate the testing," thereby allowing its competitors to "reap the underserved [sic] benefit of Dometic's time, effort, and insight derived from its work with Dr. Buc." *See id.*

The Court has reviewed Dr. Buc's deposition transcript, submitted *in camera*,[8] and concludes that there are highlighted portions that contain confidential information "that [if disclosed] would likely jeopardize [Dometic's] competitive business interests, thereby justifying [those] current designations." *See Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, Case No. 17-CV-454-GKF-JFJ, 2019 WL 2514705, at *4 (N.D. Okla. June 18, 2019). Those portions, for the most part, relate to the scope and focus of Dr. Buc's and Dometic's investigation and include details of Dr. Buc's testing, methodology, and analysis. A competitor could infer from those portions, if disclosed, which components of the units Dr. Buc was testing at Dometic's insistence and how the results of her testing drove additional testing at Dometic's urging. In addition to the disclosure of proprietary information to Dometic's competitors, other highlighted portions are covered by the

---

[8] The Court notes that the highlighted portions of Dr. Buc's deposition transcript submitted *in camera* do not fully match the noted designations of the Dr. Buc deposition in *Papasan II*. *Compare* [Doc. No. 60-2]. To the extent Dometic expanded or increased the designations in its *in-camera* submission, the Court declines to review additional designations presented for the first time in the *in-camera* submission, submitted on September 28, 2022. *See also* [Doc. No. 60 at 6 n.2 and 11 n.5]. In any event, it appears that was not Dometic's intention and that Dometic's intention is to only designate those portions listed in Doc. No. 60-2. *See, e.g.*, Doc. No. 88-2 at 24.

attorney-client or work product privileges or as other confidential commercial

information. However, there are some designations that do not appear to be narrowly

tailored and necessary to protect Dometic's competitive business interests. Using the

designations noted in [Doc. No. 60-2] as the guide, the Court's conclusions are as follows

for purposes of this action:

| | |
|---|---|
| **5:21–6:9** | This is not highlighted on the *in-camera* copy, and it should not be designated confidential for purposes of this action. |
| **25:18–29:20** | This meets the parameters described by Dometic, the governing Protective Order, and applicable law and is supported by McConnell's Declaration. It will remain designated confidential for purposes of this action. |
| **32:17–33:14** | This meets the parameters described by Dometic, the governing Protective Order, and applicable law and is supported by McConnell's Declaration. It will remain designated confidential for purposes of this action. |
| **54:6–56:5** | This portion should not be marked confidential for purposes of this action. This portion includes questioning and testimony about a publicly filed declaration Dr. Buc executed on February 23, 2016, and a privilege log attached to that declaration, in *Bowman, et al. v. Dometic Corporation*, Case No. 4:15-cv-00089-SMR-HCA (S.D. Iowa) [Doc. No. 51-5], both of which have also been filed publicly in this action. *See* [Doc. Nos. 58-2 and 88-8] in the instant action. |
| **56:6–58:13** | This meets the parameters described by Dometic, the governing Protective Order, and applicable law and is supported by McConnell's Declaration. It will remain designated confidential for purposes of this action. |

| | |
|---|---|
| **58:14–59:25** | This portion goes into the types of testing Dr. Buc performed; it meets the parameters described by Dometic, the governing Protective Order, and applicable law and is supported by McConnell's Declaration. It will remain confidential for purposes of this action. |
| **60:1–62:14** | This portion should not be marked confidential for purposes of this action. The specific questioning relates to Dr. Buc's publicly filed declaration and privilege log; it does not delve into Dr. Buc's testing or any specific materials in her file, or even the specific contents of the privilege log. Dometic has not met its burden with respect to this designation. |
| **62:15–66:6** | This portion delves into Dr. Buc's investigation, testing, and the protocols she followed; thus, it should remain confidential for purposes of this action. |
| **69:9–70:9** | This is not highlighted on the *in-camera* copy, and it should not be designated confidential for purposes of this action. |
| **74:18–81:1** | This portion probes Dr. Buc's investigation, testing, and the protocols she followed; thus, it should remain confidential for purposes of this action. |
| **81:2–82:22** | This portion meets the parameters described in the governing Protective Order as it relates to attorneys' eyes-only material, and it will remain confidential for purposes of this action. |
| **82:23–83:4** | This portion does not need to be marked confidential as it is simply Plaintiffs' counsel asking to take a break, and the videographer noting the time they went off record and came back on. |
| **83:5–89:13** | This portion is a colloquy between counsel and discusses an attorneys' eyes-only exhibit. There is also additional inquiry of Dr. Buc regarding her testing and investigation. This portion will remain confidential for purposes of this action. |

| 100:6–13 | This portion relates to testing and will remain confidential for purposes of this action. |
|---|---|
| 105:5–111:15 | This portion will remain confidential for purposes of this action. |
| 121:5–122:19 | This is not highlighted on the *in-camera* copy, and the Court presumes it was de-designated by Dometic [*see* Doc. No. 60 at 6 n.2]. Thus, it will not be designated confidential for purposes of this action. |
| 124:8–132:8 | This portion goes into Dr. Buc's testing and investigation; thus, it should remain confidential for purposes of this action. |
| 195:10–200:1 | This portion goes into Dr. Buc's testing, investigation, and protocols she followed; thus, it should remain confidential for purposes of this action. |

Although there exists a common law right to inspect and copy judicial records, such "right is not absolute," and "[a]ll courts have supervisory powers over their own records and files." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Courts have denied public access where court files could "become a vehicle for improper purposes" or could result in the disclosure "of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598 (citations omitted). Ultimately, the decision on the right of access is committed "to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599.

In exercising its discretion here, the Court has considered "the relevant facts and circumstances of the particular case and weigh[ed] the relative interests of the parties." *Hickey*, 767 F.2d at 708. Plaintiffs already have Dr. Buc's deposition transcript, and the

14

Court can decide the motion to compel at issue [Doc. No. 87] because the Court has reviewed Dr. Buc's deposition transcript *in camera*. Dometic "also has an interest in maintaining the confidentiality of business information that might harm its competitive standing if revealed to competitors." *Martinez v. Cont'l Tire the Americas, LLC*, No. 1:17-cv-00922-KWR-JFR, 2023 WL 2914796, at *2 (D.N.M. Apr. 12, 2023). Dometic has taken reasonable steps to keep Dr. Buc's deposition testimony confidential from its competitors, and there is no evidence that continuing to keep the selected portions identified above as confidential would "conceal fraud or otherwise work an injustice." *See id.*; *see also* [Doc. No. 60-1].

Additionally, imposing limitations on the disclosure of confidential information is appropriate where disclosure would allow competitors to duplicate the methods and procedures that the disclosing party "expended significant time and financial resources to develop." *Ortez v. United Parcel Serv., Inc.*, No. 1:17-cv-1202-CMA, SKC, 2018 WL 11237901, at *3 (D. Colo. Oct. 29, 2018). Dometic has presented unchallenged evidence in the form of Mr. McConnell's signed declaration that Dometic invested substantial time, money, and effort in developing the testing protocols with Dr. Buc's assistance, and that if the confidential portions of Dr. Buc's deposition transcript are disclosed to the public, Dometic's competitors could reap the benefits of "Dometic's time, effort and insight derived from its work with Dr. Buc" and thereby duplicate the testing. [Doc. No. 60-1 ¶ 5].

For example, Plaintiffs assert in their Motion that Dometic's competitor, Norcold, makes essentially the same RV gas absorption refrigerator as Dometic, "containing the

same design defect, resulting in thousands of fires due to leaking cooling unit boiler tubes." Motion at 7. If Norcold had the benefit of those portions of Dr. Buc's sealed transcript, Norcold could possibly use that information to help duplicate testing at Dometic's expense. *See Luttrell v. Brannon*, Case No. 17-2137-HLT-GEB, 2018 WL 4469276, at *7 (D. Kan. Sept. 18, 2018) (recognizing that disclosure would be harmful to the designating party's interest where it had "spent millions of dollars and a considerable amount of time, effort, and resources in developing, manufacturing, and marketing its products and procedures to give it a competitive advantage over its many competitors"); *Melnick v. Tamko Bldg. Prods. LLC*, Case No. 19-CV-2630-JAR-BGS, 2023 WL 5574188, at *3 (D. Kan. Aug. 29, 2023) (sealing documents and third-party testing records that contain details regarding the manufacturing process of the defendant's product and product specifications that may risk competitive harm). The Court finds that Dometic has met its burden to show that public disclosure of those portions of Dr. Buc's testimony that the Court outlined above could be averse to its competitive interests or should otherwise be designated as confidential.

## B.    McConnell Exhibits

Plaintiffs also challenge Dometic's confidentiality designations regarding several exhibits to Mr. McConnell's deposition in *Papasan II*.

1)    *Exhibit 18—Script used by Dometic's Refrigerator Retail Recall Line (Dometic-Hoog 008214–008222)*[9]

The first exhibit includes "an internal script and other internal information that Dometic prepared for its employees to guide discussions about the recall." [Doc. No. 60-1 ¶ 9]. Although the scripts are dated October 2018 or earlier, they "continue[] to be used to this day," and they "contain[] proprietary information on how Dometic responds to and handles inquiries from consumers regarding the recalls" and issues with the refrigerators. *See id.* Dometic and McConnell also assert that the company "invested time, money and resources into developing this resource in order to properly and effectively guide its employees on how to handle consumer inquiries." *See id.*

The Court agrees with Dometic that public disclosure of the scripts could reveal Dometic's internal proprietary strategies and would allow any competitor to duplicate and repurpose the scripts as its own. Thus, this document constitutes the standard type of proprietary commercial information that a party is permitted to maintain as confidential. *See, e.g.*, *Davis v. Soc. Serv. Coordinators, Inc.*, No. 1:10-cv-02372-LJO-SKO, 2012 WL 2376217, at *2 (E.D. Cal. June 22, 2012) (finding good cause to seal "scripts for employees to follow when interacting with customers" where those scripts, if disseminated publicly, would allow the defendant's competitors to possibly "reap the benefit of the internal operating procedures and information without having to incur the

---

[9] This exhibit includes blank or blue pages with no information at all [Dometic-Hoog 008214, 008216–008218]; thus, they are not properly designated confidential in the narrowest sense. However, it does occur to the Court that this may have been how the exhibit was presented in the deposition. Thus, the Court has considered the exhibit as a whole.

costs associated with developing the scripts and internal procedures"). Thus, Exhibit 18 will remain designated confidential for purposes of this action.

2)     *Exhibit 9—October 6, 2009 report to Dometic's parent company's board of directors (Dometic-Hoog 008461–008469)*[10]

This exhibit "is an internal report to the board of directors of Dometic's parent company, which discusses highly proprietary internal details related to Dometic's 2006 and 2008 recalls." [Doc. No. 60-1 ¶ 7]. Included in the report are detailed tables, charts, and graphs that disclose internal costs incurred and an analysis of anticipated costs "in connection with the ongoing recalls"; "how Dometic allocated those costs to various aspects of the recall[s]"; "the financial reserve adequacy for the recalls"; and "an internal breakdown and analysis of various insurance claims made on Dometic-branded refrigerators and the anticipated costs associated with those claims." *See id.* Although the report is historical[11] (dated October 6, 2009), it does include proprietary information. Thus, the Court agrees that public disclosure of this information to Dometic's competitors would disclose how Dometic analyzes and allocates internal costs and could potentially reveal internal processes for analyzing insurance claims and costs, thereby jeopardizing Dometic's competitive business interests. *See, e.g.*, *Baker v. SeaWorld Ent.,*

---

[10] This exhibit also includes a blank page with no information [Dometic-Hoog 008461]; thus, it is not properly designated confidential in the narrowest sense. However, it could be this was how it was presented in the deposition and thus the Court will leave that aspect alone.

[11] Although Plaintiffs make a conclusory challenge based on the McConnell exhibits and the Buc deposition being "historical" [Doc. No. 57 at 7; Doc. No. 61 at 2], Plaintiffs do not cite to any legal authority that would allow the Court to reject the proprietariness of these documents or exhibits based on history alone.

*Inc.*, Case No.: 14cv2129-MMA (AGS), 2017 WL 5029612, at *5–6 (S.D. Cal. Nov. 3, 2017) (overruling the plaintiffs' objections to the defendants' confidentiality designations of internal business materials, including an executive's notes for a board of directors' presentation, a draft of the board of directors' meeting presentation slides, a confidential consumer report, and communications regarding pricing and marketing strategies). Thus, Exhibit 9 will remain designated confidential for purposes of this action.

3)    ***Exhibit 14—Compilation of Incident Files by Dometic Regarding Fires in their Gas Absorption Refrigerators (Dometic-Hoog 008697–008762)***

This exhibit contains a compilation of different product incident reports, internal Dometic reports, handwritten notes, and databases. [Doc. No. 60-1 ¶ 8]. Dometic originally designated 66 pages as confidential, but upon further review limited the confidentiality designations to 11 pages. [Doc. No. 60 at 11 n.5]. What remains as designated confidential is a specific internal complaint form (Dometic-Hoog 008697–008698) used by Dometic, which if disclosed would "reveal[] to Dometic's competitors how Dometic has chosen to document and record alleged incidents on its products." [Doc. No. 60-1 ¶ 8]. Dometic created this specific form, the company holds it as proprietary, and such form is not accessible to the public or its competitors. *See id.* Therefore, it is properly marked confidential based on McConnell's declaration and the Court's review.

The next page of that exhibit (Dometic-Hoog 008699) was a "snapshot" pulled from Dometic's internal customer database and reveals "how Dometic documents and records its customer data as well as specific information about . . . Dometic's customers."

*See id.* McConnell's declaration affirms that the customer database information is internal, meaning not accessible to the public or Dometic's customers. Thus, it will remain marked confidential for purposes of this action.

The handwritten notes (Dometic-Hoog 008700, 008703, and 008705) and bill of lading (Dometic-Hoog 008706) present a closer call because they do not appear to be on any specific Dometic internal form or database. However, they do appear to the Court to relate to the product incident form and internal database marked confidential in the same exhibit, such that disclosure of the handwritten notes and bill of lading would necessarily reveal the information contained therein, or the thought process of what information Dometic takes down from the consumers. Additionally, they relate to other customers that are not a part of this lawsuit. As such, the handwritten notes and bill of lading are appropriately marked confidential.

Also included are Return Goods Authorization forms (Dometic-Hoog 008704 and 008707), which show Dometic's internal processes for returned goods and the factors Dometic considers in authorizing returns. [Doc. No. 60-1 ¶ 8]. Thus, it is appropriately marked confidential based on McConnell's declaration and the Court's review.

The last two pages of Exhibit 14 (Dometic-Hoog 008761–008762) appear to be a printout from a website with some handwritten notes at the top and a document titled, "Metadata." At first blush, the Court does not see how these documents relate to the rest of the exhibit or the description from McConnell in his declaration. However, there is a reference to "template" at the bottom of the website, and it does occur to the Court that

this could be from an internal website within Dometic.[12] There is also a reference to "Page 2 of 2" and "Attachment #2"; thus, the Court assumes this document is connected to other documents within the exhibit.

The Court concludes that Exhibit 14 is a proprietary business record, and that Dometic has a strong interest in maintaining its confidentiality. Dometic has limited its redactions to only 11 pages; thus, the designations appear to be narrowly tailored and necessary to protect Dometic's competitive business interests.

### 4)    *Exhibit 19—McConnell's Internal Emails with Dometic's affiliate companies in Sweden regarding Dr. Buc's testing (Dometic-Hoog 008786–008791)*

This exhibit includes internal emails about Dr. Buc's testing. Specifically, the emails discuss sample size, specific tests performed and the detailed results of those tests, the parameters chosen by Dometic and Dr. Buc, and the materials used by Dr. Buc in her testing. [Doc. No. 60-1 ¶ 10]. The emails appear to contain more details about Dr. Buc's testing than the confidential portions of her deposition transcript noted above. For the same reasons discussed above, the Court finds good cause for maintaining the confidentiality designations in Exhibit 19.

### III.    **CONCLUSION**

Based on the Court's analysis above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' First Amended Motion and Supporting Brief for Order Compelling Dometic to Remove Confidentiality Designations on Certain Documents Produced in

---

[12] The Court was not able to publicly access the webpage using the URL on the page.

Discovery [Doc. No. 57]. Accordingly, the Court directs Dometic to remove the confidentiality designations only on those specific documents identified in this Order and to provide Plaintiffs with copies of the de-designated documents within five business days of this Order.

IT IS SO ORDERED this 29th day of September 2023.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE