IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KEVIN W. HOOG and          )
REBECCA HOOG,              )
                          )
            Plaintiffs,    )
                          )
v.                        )          Case No. CIV-20-00272-JD
                          )
DOMETIC CORPORATION,       )
a Delaware corporation,    )
                          )
            Defendant.     )

## ORDER

Before the Court is Plaintiffs' Motion to Overrule Objections and Compel Further

Responses to First Set of Requests for Production of Documents to Defendant Dometic

Corporation ("Motion") [Doc. No. 87].[1] Defendant Dometic Corporation ("Dometic")

filed a response in opposition ("Response") [Doc. No. 92], and Plaintiffs filed a reply

[Doc. No. 93]. For the reasons stated below, the Court denies the Motion.

## I.    BACKGROUND

Plaintiffs seek an order compelling Dometic to respond to Plaintiffs' Request for

Production No. 15, which requests "[a] complete and unredacted copy of the BUC

TESTING MATERIAL." [Doc. No. 88-1 at 18].[2] The "BUC TESTING MATERIAL" is

defined in Plaintiffs' production requests as "all DOCUMENTS, COMMUNICATIONS,

---

[1] The Court also reviewed Terrence Beard's Declaration [Doc. No. 88] in support of the Motion and Dometic's Notice of Supplemental Authority Concerning Buc Testing Materials Subject to Plaintiffs' Motions to Compel, ECF No. 57 and 87 [Doc. No. 129].

[2] The Court uses ECF page numbering in this Order.

reports, spreadsheets, data, photographs, and or video regarding testing and/or analysis of

DGARs [DOMETIC-BRANDED GAS ABSORPTION REFRIGERATORS] by Dr.

Elizabeth Buc, including, but not limited to, all material identified by Dr. Buc in her

declaration filed as Doc. 51-5 in *Bowman vs. Dometic Corporation* (SD, Iowa), No. 4:15-

cv-00089." [Doc. No. 88-1 at 10]. "DOMETIC-BRANDED GAS ABSORPTION

REFRIGERATORS" or "DGARs" are defined in Plaintiffs' production requests as

"Dometic-branded gas absorption refrigerators designed, manufactured, sold, distributed

or otherwise placed into the stream of commerce since January 1, 1997, including, but

not limited to, Models RM 2620, RM/DM 2652, RM/DM 2662, RM/DM 2663, RM

3762, DMR/DMC 7-Series, RM 2820, DM 2852, DM 2862, RM 3862, RM 3863, RM

3962, NDR 1292 and NDR 1402." [Doc. No. 88-1 at 8]. Plaintiffs assert that Dr. Buc's

testing material "is relevant and proportional to the needs of the case, and therefore

discoverable." Motion at 8.

     Dr. Buc was an outside consultant hired by Dometic's attorneys in 2005 to

conduct a series of tests on certain models of Dometic gas absorption refrigerators. [Doc.

Nos. 58-2 & 60-1 at ¶ 3]. Dometic contends that Dr. Buc's testing material "[is] not

relevant to the issues in dispute" and "bear[s] little to no proportionality to the needs of

this case" because Dr. Buc's testing was confined to those models that were recalled in

2006 and 2008 and Plaintiffs' refrigerator was not included in the recall population.

Response at 8. Additionally, Dometic asserts that the testing material is not discoverable

because for "nearly 20 years, [it] has maintained work product protection over [Dr.

Buc's] testing materials" and "attorney-client privilege over communications between Dr.

Buc and Dometic's outside counsel pertaining to [the] testing." *Id.* at 7. Finally, Dometic

asserts that it has never produced, nor been ordered to produce, Dr. Buc's testing material

in any litigation.[3] *Id*. at 8.

## II.     DISCUSSION

### A.     Discovery Standards

Under Federal Rule of Civil Procedure 34, "[a] party may serve on any other party

a request within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). The scope of discovery is

governed by Federal Rule of Civil Procedure 26(b)(1). Under Rule 26(b)(1), "[p]arties

may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Accordingly, relevance and proportionality are the considerations that govern scope. The

considerations that bear on proportionality include: "the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit." *Id.* "Information within this scope of discovery need not be admissible in

evidence to be discoverable." *Id.*

---

[3] Dometic also asserts that Plaintiffs' Motion is untimely because it was filed on the last day of discovery. Response at 7, 13–14. The Court finds it unnecessary to reach this argument or Dometic's assertions of privilege given its determination that Dr. Buc's testing material is not relevant to any party's claim or defense or proportional to the needs of the case as set forth herein.

"'[R]elevance' for purposes of discovery remains broader than 'relevance' for purposes of trial admissibility." *Reibert v. CSAA Fire & Cas. Ins. Co.*, Case No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3 (N.D. Okla. Jan. 3, 2018).[4] Although the scope of discovery is broad, it is not unlimited and is further defined by the proportionality considerations. *Ramos v. Banner Health*, Civil Action No. 15-cv-2556-WJM-MJW, 2018 WL 4700707, at *3 (D. Colo. Aug. 8, 2018). A plaintiff's "broad theory of the case" does not necessarily justify broad discovery, and courts should thwart "fishing expeditions." *Reibert*, 2018 WL 279348, at *4 (internal quotation marks and citation omitted); *see also McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) (unpublished) (recognizing that "[t]he district court was not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim").

The party seeking discovery is not required to address all proportionality considerations; however, these factors should guide the parties' requests, responses, and objections under Rule 26. *Reibert*, 2018 WL 279348, at *4. The trial court is given wide discretion in balancing the needs of both parties. *Tanner*, 405 F. Supp. 3d at 1178 (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)). When the

---

[4] Lower courts within the Tenth Circuit have endorsed a broad view of relevance following the 2015 Amendment to Rule 26. *See, e.g.*, *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1183 (D.N.M. 2019); *Reibert*, 2018 WL 279348, at *3; *Rowan v. Sunflower Elec. Power Corp.*, Case No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016). However, there are limitations. The proportionality factors seek "to eliminate unnecessary or wasteful discovery, and to impose a careful and realistic assessment of actual discovery needs." *Chinowth & Cohen v. Cornerstone Home Lending, Inc.*, Case No. 15-CV-555-JED-PJC, 2016 WL 10611856, at *2 (N.D. Okla. Aug. 5, 2016).

request is overly broad, or relevance is not clear, the party seeking the discovery has the

burden to show the relevance of the request. *Design Basics, L.L.C. v. Strawn*, 271 F.R.D.

513, 523 (D. Kan. 2010).

**B.     Analysis**

In this action, Plaintiffs seek money damages following a fire on March 30, 2018,

which they allege was caused by a defective NDR 1292[5] gas absorption refrigerator (the

"Refrigerator") manufactured by Dometic. *See* Second Am. Compl. [Doc. No. 27] ¶ 1.

The Refrigerator was installed as original equipment in Plaintiffs' RV in 2007. The Court

notes that both the origin and the cause of the fire, including whether the fire originated

outside the shop building or inside the RV and whether it was caused by Plaintiffs'

Refrigerator, are disputed with competing expert reports from both parties that are the

subject of pending motions to exclude. [*See* Doc. Nos. 102, 102-1, 104, & 104-2].[6] The

Court has discussed the factual background of this individual products liability case in

previous Orders. [*See* Doc. Nos. 36 & 132]. Additional factual background will be

provided as necessary to resolve the Motion.

---

[5] Since the filing of Plaintiffs' Second Amended Complaint and Dometic's
Answer [Doc. No. 37], Dometic has stipulated that Plaintiffs' refrigerator was a Dometic
Model NDR 1292, Serial Number 65100048, installed as original equipment in Plaintiffs'
motorhome or RV. Motion at 2 n.2.

[6] The Court in no way prejudges any pending motion to exclude expert testimony
in this case by stating anything in this Order; however, the Court has reviewed the expert
reports for background and context in terms of determining relevance and proportionality
of Dr. Buc's testing material.

### 1) *Relevance of Dr. Buc's Testing Material*

The relevance of Dr. Buc's testing in this individual products liability case is not facially apparent to the Court particularly given Plaintiffs' blanket request for historical data and that her testing was confined to different refrigerator models. At least in their Motion, Plaintiffs make no attempt to show the Court that Plaintiffs' Refrigerator shared the same design defect as the models included in Dr. Buc's testing, and the Court is not obligated to scour the record in search of support for Plaintiffs' counsel's arguments as to relevance.[7]

Plaintiffs allege in their Second Amended Complaint that Dometic's use of a single line of weld to carry all the heat necessary to run the cooling unit in the refrigerator is common to all Dometic gas absorption refrigerators and is what makes that design defective. *See* Second Am. Compl. [Doc. No. 27] ¶¶ 23, 32, 33. However, Plaintiff's own expert, Orion Keifer, a professional engineer, admitted in his deposition testimony that Plaintiffs' Refrigerator transferred heat through two heating element pockets and two welds in contrast to the models in the recall population and those tested by Dr. Buc, which transferred heat through a single weld. [Doc. No. 92-10 at 12–13].

---

[7] In Plaintiffs' reply brief [Doc. No. 93 at 4], counsel mischaracterizes Patrick McConnell's November 3, 2022 deposition testimony to support the assertion that "[t]here is no dispute that the [Single Weld Design] is common to all Dometic refrigerators" and is the design defect at issue. Rather, Mr. McConnell maintained that the heater pockets in the larger model refrigerators, like Plaintiffs' model, are connected using a "fillet weld" and are "different" because they "are quite a bit lower in wattage than the single" heater pocket in the smaller models from the recall population. [*See* Doc. No. 93-1 at 5].

Likewise, Patrick McConnell[8] testified that the 1292 model, which was Plaintiffs'

model, was not included in the recall because they bore "a completely different design."

[Doc. No. 92-1 at 14]. Specifically, McConnell stated that the recall population had "one

heater pocket" with "almost twice the wattage of the heaters that are used in the . . .

1292," whereas the 1292 model has "two heater pockets located in different locations

with two welds" and generates less heat over the boiler area than the recall models. *See*

*id.* at 14–15. Additionally, Plaintiffs' expert, Peter Layson, a scientist with AEGI,

clarified in his deposition testimony that about 35 percent less heat is transferred through

the two welds in the 1292 models than the single weld in the smaller models, which made

up the recall population and Dr. Buc's testing sample. [Doc. No. 92-11 at 10–12]. Mr.

Layson indicated that the lower amount of heat transferred over a larger surface area in

Plaintiffs' Refrigerator, which is a larger-size model, theoretically reduces the rate of

corrosion. *See id.* at 11–13.

Additionally, Plaintiffs allege in the operative complaint that the concentration of

heat on the inside surface of the boiler tube wall caused by Dometic's use of the single

weld, combined with stress from the heating and cooling cycles 15 to 20 times a day,

causes any protective layer inside the boiler tube to break down over time. *See* Second

Am. Compl. [Doc. No. 27] ¶¶ 20–21. "Once the protective layer is compromised,"

Plaintiffs assert that "the highly corrosive cooling solution begins to eat away at the

---

[8] According to his Declaration, Mr. McConnell was responsible for product safety
for Dometic-branded gas absorption refrigerators sold in the United States from the early
2000s until his retirement in 2018. [Doc. No. 92-6 at ¶ 1]. Since his retirement, he has
served as a consultant for Dometic. *See id.*

boiler tube wall, creating excessive corrosion along the line of the heater pocket welds."
*See id.* ¶ 21. But Dr. Buc "did not investigate or test the existence, cause, or propensity
for generalized or pitting corrosion in [DGARs]," nor did she attempt to determine "the
underlying cause of fatigue cracks and associated leaks" in any DGARs. [Doc. No. 92-6
at ¶¶ 5–6]. Rather, her testing "was limited to whether and under what conditions an
ignition of refrigerant and progression of fire could occur" in DGARs. *See id.* at ¶ 4.

Given these differences, it is unclear how Dr. Buc's testing material is relevant to
Plaintiffs' claims or would advance Plaintiffs' theory of the case. *See, e.g.*, *McKellips v.
Kumho Tire Co.*, 305 F.R.D. 655, 671 (D. Kan. 2015) (noting that "[g]enerally, different
models of a product will be relevant if they share with the accident-causing model those
characteristics pertinent to the legal issues raised in the litigation"); *Picasso Builders,
LLC v. Roofing Wholesale Co.*, No. 1:20-cv-00539-GJF/JFR, 2020 WL 12739434, at *4
(D.N.M. Nov. 30, 2020) (precluding discovery of slate tiles sold by the same
manufacturer, but that were extracted from a separate quarry than the slate tiles at issue in
the lawsuit, on the basis of relevance). Indeed, other district court orders have
acknowledged that "'[p]ermitting discovery of models that are not substantially similar is
truly the equivalent of comparing apples and oranges where there are differences between
the other models and the model at issue.'" *Dreger v. KLS Martin, LP*, Case No. 2:20-cv-
3814, 2023 WL 532012, at *3 (S.D. Ohio Jan. 27, 2023) (quoting *Reising v. Toro Co.*,
Case No. 1:17-cv-00431, 2018 WL 5489568, at *4 (S.D. Ohio Oct. 29, 2018)) and
explaining that it is the plaintiff's burden to identify the "pertinent characteristics" that
are relevant in determining "substantially similar models"); *see also Reilly v. Home*

*Depot USA, Inc.*, Civil No. 20-13030 (NLH/AMD), 2021 WL 6052407, at \*3–4 (D.N.J.

Dec. 21, 2021) (finding that the plaintiff failed to show that discovery of other model

ladders was warranted absent a showing that those models shared pertinent characteristics

with the model ladder at issue in the case).

In addition to asserting that Dr. Buc's testing material bears on whether DGARs,

including Plaintiffs' Refrigerator, contained a dangerous safety-related defect, Plaintiffs

argue that her testing material is relevant for other reasons. First, Plaintiffs assert that Dr.

Buc's testing affects the credibility of Dometic's experts, "all of whom rely to some

extent on Buc's conclusions in forming their own opinions." Motion at 9. Plaintiffs make

this conclusory assertion without pointing to anything in Dometic's proposed expert

witnesses' reports to support this conclusion. In their reply, Plaintiffs assert that the "Buc

Testing Material . . . permeate[s] the testimony of Dometic's witnesses," but fail to point

to any testimony of record to support this conclusory assertion. [Doc. No. 93 at 7 &

n.12].

Dometic, on the other hand, has indicated it "has no intention of relying on the

Buc Testing Materials as a basis for defending" the case. Response at 16. The Court notes

that Dr. Buc is not listed as a witness for Dometic [Doc. No. 78], nor does it appear from

the Court's review of Dometic's proposed expert witnesses' reports that any of them

relied on Dr. Buc's testing in forming their opinions. [*See* Doc. No. 92-8 (Dr. Baron's

report is based on the joint inspection and testing of Plaintiffs' Refrigerator at AEGI in

9

December 2018 and August 2022[9] and independent testing by ESi of exemplar cooling

units and components; Dr. Baron, a metallurgical engineer, is the principal and director of

the materials team at ESi), Doc. No. 102-1 (Mr. Oliveaux's report is based on his June

15, 2018 physical inspection and examination of the fire loss at the scene, to include

Plaintiffs' 5,000-square foot shop, the RV, two passenger vehicles, and Plaintiffs'

Refrigerator; additionally, it appears he was present at the joint inspection and testing of

Plaintiffs' Refrigerator at AEGI in December 2018 [Doc. No. 92-8 at 22]), and Doc. No.

107-6 (Sonya Kwon analyzed Dometic's claims data, and the materials she relied upon

are referenced in her report at pages 5–6)].

Second, Plaintiffs assert that Dr. Buc's testing is relevant because it establishes the

point in time when Dometic received notice and knowledge of the defects and safety risks

and shows the nature of Dometic's conduct in light of same. Motion at 9. Plaintiffs assert

that "[f]ixing the point in time where Dometic knew their [DGARs] contained dangerous

safety-related defects is also relevant to [their] claims under the Oklahoma Consumer

Protection Act." Motion at 9 n.20. Additionally, in their reply, Plaintiffs argue that the

recalls were based on Dr. Buc's testing and, as such, Plaintiffs' "post-sale recall cause of

---

[9] Joint inspection and testing of Plaintiffs' Refrigerator occurred at AEGI in
December 2018 and August 2022. [*See* Doc. Nos. 92-8 & 92-9]. Present from AEGI were
Plaintiffs' experts Peter Layson and Orion Keifer. Mr. Layson and Mr. Keifer co-
authored the expert report at Doc. No. 92-9. Since 2001, Mr. Keifer and Mr. Layson have
tested and analyzed more than 50 cooling units from DGARs, as well as more than 100
gas absorption refrigerators manufactured by Dometic's main competitor, Norcold. [*See*
Doc. No. 92-9 at 6].

action is based on Dometic's negligent failure to include the NDR 1292 Model in their

recalls—or initiate a separate recall for that model." [Doc. No. 93 at 6].

It is undisputed that Plaintiffs' Refrigerator was not in the recall population or in

Dr. Buc's testing sample. Thus, Dr. Buc's testing material is not needed for proof of that

fact. Dometic's Notice of Potential Defect to the National Highway Traffic Safety

Administration ("NHTSA") on August 28, 2006 [Doc. No. 92-7], arguably establishes

the point in time that Dometic became aware of a potential defect in certain models of its

gas absorption refrigerators and provides further information regarding that potential

defect. From the Court's review of the record, there are witnesses, including Mr.

McConnell, who can establish this timeline. Considering that and the fact that Plaintiffs'

own experts concede there are differences between Plaintiffs' Refrigerator and the

models comprising Dr. Buc's testing sample, the Court finds that Plaintiffs fail to connect

the relevance of the testing material to their negligence and post-sale claims. Absent any

showing by Plaintiffs, including expert support, that the models Dr. Buc tested shared the

same design defect or pertinent characteristics to make them "substantially similar" to

Plaintiffs' Refrigerator model, the Court does not find a basis to open discovery to Dr.

Buc's testing of other models.

Finally, Plaintiffs assert, without explanation, that Dr. Buc's testing material bears

on the credibility and accuracy of Dometic's representations to the NHTSA in 2006 and

2008. Motion at 9. Plaintiffs do not indicate how this is relevant to any remaining cause

of action or identify its importance in resolving any issue. Thus, the Court disregards this

argument. *Cf.* Fed. R. Civ. P. 7(b)(1)(B) (the motion should explain with particularity the grounds for seeking the order).

### 2)      *Proportionality of Dr. Buc's Testing Material*

Relevance and scope of discovery are further defined by the proportionality considerations in Rule 26(b)(1), which the Court identified above. Plaintiffs contend that Dr. Buc's testing material is proportional to the needs of the case because: (1) the "existence, nature, and scope of safety-related defects and risks in [DGARs] is a central issue in dispute in the case"; (2) Plaintiffs' case involves more than $1 million in property damage; (3) vindication of Plaintiffs' claims is a matter of public interest and importance because the defect is present in millions of refrigerators sold in the RV market in the United States; (4) Plaintiffs have no other means of obtaining Dr. Buc's testing material except through Dometic; and (5) the burden and expense on Dometic is de minimis because Dr. Buc sent them all of her material. Motion at 9–10.

In response, Dometic first asserts that for the same reasons Dr. Buc's testing material is not relevant, it is not important or necessary for resolving the issues in this case. Response at 17. Second, Dometic asserts that this case involves a single refrigerator and no personal injury; thus, the amount in controversy is minimal. *See id.* Third, Dometic contends that Plaintiffs can hire experts and conduct their own testing and indicates that Plaintiffs have. *See id.* Finally, Dometic maintains that the burden associated with production outweighs the benefit of the discovery because if Dr. Buc's testing material is produced, there will be litigation in this case about other refrigerator models not at issue in this case. *See id.*

The Court agrees that Plaintiffs' request for Dr. Buc's testing material is not proportional to the needs of the case, particularly "considering the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). First, the importance of Dr. Buc's testing material in resolving the issues in Plaintiffs' case is marginal, at best, given that Dr. Buc did not test Plaintiffs' Refrigerator model and the model differs from her testing sample. Second, Dr. Buc's testing was limited as she did not conduct testing to determine the existence, cause, or propensity for corrosion, fatigue cracks, or associated leaks, which Plaintiffs allege make up the design defect in their Refrigerator.

Finally, in weighing the burden of production against its likely importance to the issues in Plaintiffs' case, the Court determines that the request is not proportional. This case follows significant discovery production in two putative class actions involving the same lead Plaintiffs' counsel, Terrence Beard. The case before this Court involves a single refrigerator involved in a fire on March 30, 2018, a refrigerator model that was not tested by Dr. Buc. Both parties have hired experts, who have examined and tested Plaintiffs' Refrigerator at joint inspections in December 2018 and August 2022 and conducted their own independent testing on other units. [*See* Doc. Nos. 92-8 & 92-9]. As such, Dr. Buc's testing material is neither "relevant to any party's claim or defense [nor] proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1)

## III.   CONCLUSION

Based on the Court's analysis above, the Court DENIES Plaintiffs' Motion to

Overrule Objections and Compel Further Responses to First Set of Requests for

Production of Documents to Defendant Dometic Corporation [Doc. No. 87].[10]

IT IS SO ORDERED this 8th day of November 2023.

_____

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[10] In light of this Order and the Court's Orders from February 15, 2023 and
September 29, 2023 [Doc. Nos. 125 & 132], Plaintiffs' Motion to Stay Proceedings
Pending Resolution of Discovery Dispute RE: Buc Testing Material [Doc. No. 96] is
DENIED as MOOT.