IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN W. HOOG and REBECCA HOOG, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. CIV-20-00272-JD |
| DOMETIC CORPORATION, a Delaware corporation, | ) ) ) ) |
| Defendant. | ) |

# ORDER

Before the Court is Defendant Dometic Corporation's Motion to Exclude Expert Declaration of Allan J. Kam ("Motion") [Doc. No. 106]. Plaintiffs filed a response in opposition [Doc. No. 113]. For the reasons stated below, the Court grants in part and denies in part the Motion.[1]

**I.    BACKGROUND**

Plaintiffs seek money damages following a fire, which they allege was caused by a defective NDR 1292 gas absorption refrigerator (the "Refrigerator") manufactured by

---

[1] Based on the evidence in the record before it, including the relative completeness of Mr. Kam's expert declaration, the transcript of his videotaped deposition, and other materials cited by the parties, the Court finds a *Daubert* hearing is unnecessary to resolve the Motion. *See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999); *see also Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (unpublished) (concluding that the district court properly exercised its discretion in issuing a *Daubert* ruling without a formal hearing where the district court had before it several expert reports, deposition transcripts, and other evidence that accompanied the parties' arguments).

Dometic. [Doc. No. 27 at 1].[2] The Refrigerator was installed as original equipment in Plaintiffs' 2007 RV, which Plaintiffs purchased from a private party around October 26, 2011. [Doc. No. 27 at 1, 18].

Dometic initiated recalls of select models of its gas absorption refrigerators through the National Highway Traffic Safety Administration ("NHTSA") in 2006 and 2008. *See id.* at 14. Plaintiffs' Refrigerator model was not included in the recalls. Plaintiffs allege, however, that the NDR 1292 refrigerators share common design defects with the recalled models and that Dometic is aware "that these model refrigerators continue to fail and cause fires . . . ." *Id.* at 16. Notwithstanding this knowledge, Plaintiffs allege that "Dometic never stopped selling . . . its dangerously defective refrigerators . . . , nor . . . paused production and sales so that the refrigerators could be modified to operate safely." *Id.* at 14. As a result, Plaintiffs allege that Dometic sold more than "3 million defective gas absorption refrigerators" in the United States from 1997 to 2017. *See id.*

Additionally, Plaintiffs allege that Dometic had an ongoing duty to disclose known defects and to conduct recall and retrofit campaigns of its gas absorption refrigerators in a timely manner. *See id.* at 16. To that end, Plaintiffs allege that Dometic breached its duty by "actively concealing and failing to accurately and completely disclose the dangerous safety-related design defects inherent in their gas absorption refrigerators," including Plaintiffs' Refrigerator. *See id.* at 16–17. Rather, Plaintiffs contend that Dometic

---

[2] The Court uses CM/ECF page numbering from the top of filings in this Order. As noted in other orders, since the filing of Plaintiffs' Second Amended Complaint [Doc. No. 27] and Dometic's Answer [Doc. No. 37], Dometic has stipulated that the Refrigerator was a Dometic Model NDR 1292, Serial Number 65100048.

affirmatively represented that their gas absorption refrigerators were "free of defects." *See id.* at 17.

Following the Court's Order [Doc. No. 36] granting in part and denying in part Dometic's Partial Motion to Dismiss [Doc. No. 29], Plaintiffs' remaining claims in their Second Amended Complaint include Count 1, strict liability/design defect; Count 2, strict liability/failure to warn; Count 3, negligence; Count 4, negligence/post-sale duty to warn; Count 5, negligence per se; Count 6, negligence/post-sale duty to conduct adequate recall/retrofit; and Count 8, to the extent it alleges unfair trade practices under the Oklahoma Consumer Protection Act. Dometic has filed a Motion for Partial Summary Judgment regarding Plaintiffs' claims in Counts 4, 5, 6, and 8 and regarding Plaintiffs' request for punitive damages. *See* [Doc. No. 107 at 36]. Thus, regardless of the Court's ruling on Dometic's pending motion for partial summary judgment, Counts 1, 2 and 3 will remain for trial.

Plaintiffs have proffered Allan J. Kam, an attorney who formerly worked for NHTSA, to testify about the policies, procedures, and processes regarding vehicle and equipment recalls; the duties and obligations of manufacturers of vehicle equipment; and the nature, manner, and procedures regarding the performance of recalls involving safety-related defects and non-compliance issues. [Doc. No. 71-1 at 7–8]. Mr. Kam's expert declaration, which includes his background and qualifications, along with a transcript of his videotaped deposition, are attached to the Motion. [Doc. Nos. 106-1 & 106-7].

Dometic moves to exclude Mr. Kam's proposed testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dometic asserts that Mr. Kam's opinions are not relevant and will not help the trier of fact to understand the evidence or to determine a fact in issue because Plaintiffs' Refrigerator was not included in the recalls, nor was Mr. Kam asked to opine on whether it or other comparable models should have been included. [Doc. No. 106 at 10]. Additionally, Dometic asserts that Mr. Kam's proposed testimony should be excluded because he offers legal opinions on the requirements of the National Traffic and Motor Vehicle Safety Act ("the Safety Act").[3] [Doc. No. 106 at 11–14]. Further, Dometic contends that Kam's opinions will confuse or mislead the jury "into believing that a safety defect still exists in the recalled refrigerators because NHTSA did not make a finding of 'no defect.'" *See id.* at 16. Likewise, Dometic asserts that Kam's opinions concerning the safety remedy provided as part of the recalls and whether NHTSA approved of the remedy are not relevant because Plaintiffs' Refrigerator did not contain the safety remedy. *See id.* at 16–19. Finally, Dometic asserts that Kam's opinion that Dometic's completion rates for the recalls were well below average is not relevant and is unreliable. *See id.* at 19–22.

In response, Plaintiffs assert that "Mr. Kam clearly has the necessary qualifications to offer the NHTSA-related testimony contained in his expert declaration at trial," noting his testimony has been admitted in both federal and state courts throughout the country. [Doc. No. 113 at 5–6 & n.4]. Plaintiffs assert that Mr. Kam's specialized knowledge of NHTSA procedures for manufacturer-initiated recalls—a subject beyond

---

[3] The Safety Act is codified at 49 U.S.C. § 30101 *et seq.*

the ken of the average juror—will assist the jury in understanding the evidence. *See id.* at 6–8. Additionally, Plaintiffs assert that Kam's proposed testimony concerning Dometic's completion rate for the recalls is reliable in that Kam based his opinion on equipment recalls reported to Congress by NHTSA. *See id.* at 9. Plaintiffs maintain that the "gravamen" of their negligent recall claim is that Dometic knew or should have known that its Model 1292 refrigerators were a fire hazard and should have included them in the recalls. *See id.* at 11. To that end, Plaintiffs assert that the issues of whether Dometic's recalls were timely, effective, and inclusive of all defective products are questions of fact for the jury, and that Mr. Kam's proffered testimony will provide the jury with the necessary framework to evaluate that evidence. *See id.* at 12. Finally, Plaintiffs assert that Mr. Kam does not offer any legal conclusions regarding the adequacy of Dometic's recalls because that is a fact question for the jury based on the evidence "and their understanding of the NHTSA recall process, as informed by Mr. Kam's specialized knowledge." *See id.* at 13.

## II.   **DISCUSSION**

The Court's previous order denying Plaintiffs' Motion to Exclude the Opinions of Walter Oliveaux sets forth the applicable legal standards relevant to the admission of expert testimony, and the Court incorporates them herein by reference. [Doc. No. 135]. Dometic does not challenge Mr. Kam's qualifications.[4] Rather, Dometic's arguments are directed at the reliability and relevance of Mr. Kam's proposed expert testimony.

---

[4] Although Plaintiffs devote a portion of their response to addressing Mr. Kam's qualifications to testify as an expert on NHTSA practices and procedures [Doc. No. 113

5

A.     **Mr. Kam's opinions are generally relevant and helpful.**

Plaintiffs, as the proponent of Mr. Kam's expert testimony, bear the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). Under Rule 702, Plaintiffs must demonstrate to the Court "that it is more likely than not that . . . [Mr. Kam's] specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Relevant expert testimony 'must logically advance[] a material aspect of the case,' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quoting *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) and *Daubert*, 509 U.S. at 591). In assessing whether expert testimony will assist the trier of fact, a court should consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476–77 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)).

Dometic asserts that Mr. Kam's opinions will not help the trier of fact to understand the evidence or determine a fact in issue because Plaintiffs' Refrigerator was not included in the recalls, and Mr. Kam was not asked to opine—and did not opine—on

---

at 4–8], Dometic's Motion does not challenge Mr. Kam's qualifications. "'When no objection is raised, district courts are not required to make explicit on-the-record rulings.'" *United States v. Avitia-Guillen*, 680 F.3d 1253, 1257 (10th Cir. 2012) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) and explaining that where a party objects only to an expert's qualifications, the party does not preserve an objection to the expert's methodology).

whether Plaintiffs' Refrigerator or other comparable models should have been included in the recalls. [Doc. No. 106 at 10]; *see also* [Doc. No. 106-7 at 49]. Likewise, Mr. Kam did not opine—nor was he asked to opine—that the recalls were underinclusive, untimely, or in violation of any applicable Safety Act requirement. *See* [Doc. No. 106-7 at 19, 49]. Mr. Kam explained in his deposition that he was not asked to "conduct that kind of review." *Id.* at 49. Dometic asserts that the opinions that Mr. Kam does offer have no bearing on the allegations in the Second Amended Complaint and "are not tied to any factual dispute in this case." [Doc. No. 106 at 11].

Plaintiffs maintain that the "gravamen" of their negligent recall claim is that Dometic knew or should have known that its Model 1292 refrigerators were a fire hazard and should have included them in the recalls. [Doc. No. 113 at 11]. To that end, Plaintiffs assert that the issues of whether Dometic's recalls were timely, effective, and inclusive of all defective products are questions of fact for the jury, and that Mr. Kam's proffered testimony will provide the jury with the necessary framework to evaluate that evidence. *See id.* at 12.

"Oklahoma does not recognize a post-sale duty to warn or retrofit a product," under a strict products liability theory. *Wicker ex rel. Estate of Wicker v. Ford Motor Co.*, 393 F. Supp. 2d 1229, 1236 (W.D. Okla. 2005); *Stokes v. Lake Raider, Inc.*, No. CIV-13-507-KEW, 2014 WL 7375576, at *2 (E.D. Okla. Dec. 29, 2014). Yet, it does permit a cause of action for post-sale duty to warn or retrofit a product asserted under a negligence theory or brought as a separate negligence claim. *See Stokes*, 2014 WL 7375576, at *2; *Fleck v. Gen. Motors LLC*, 154 F. Supp. 3d 30, 43–44 (S.D.N.Y. 2015) (noting that,

regardless whether Oklahoma courts have specifically recognized a negligent recall claim, the plaintiff's negligence claim with respect to the recall was firmly grounded in Oklahoma law).

Here, negligence is the basis of Plaintiffs' negligence/post-sale duty to conduct adequate recall/retrofit claim in Count 6. Plaintiffs allege in Count 6 of the Second Amended Complaint that Dometic had a duty to conduct any recall or retrofit campaign in a reasonable manner, and that Dometic knew or should have known its gas absorption refrigerators, including Plaintiffs' Refrigerator, were defectively designed, or likely to be dangerous, when used in a reasonably foreseeable manner. [Doc. No. 27 at 27]. Plaintiffs further allege that Dometic breached its duty to Plaintiffs by failing to use reasonable care in initiating and conducting recall and retrofit campaigns that "neither eliminated the safety defects inherent in said products, nor rendered them safe to use for their reasonably foreseeable purpose." *See id.*

The necessary elements of a negligence claim under Oklahoma law are: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) the defendant failed to fulfill that duty; and (3) the defendant's failure to meet that duty was the proximate cause of the plaintiff's injuries. *See Snow v. TravelCenters of Am. LLC*, 527 P.3d 741, 747 (Okla. Civ. App. 2022). Here, Dometic concedes in its motion for partial summary judgment that it assumed a post-sale duty by instituting and conducting the recalls, and that it was required under the law to exercise reasonable care in conducting the recalls. [Doc. No. 107 at 32]; *see also Fleck*, 154 F. Supp. 3d at 44 (finding that GM "assumed a duty when it instituted the recall," and that it "exposed itself to liability if the recall was

8

carried out negligently and caused injury"); *Cf.* [Doc. No. 37 at 24] (Dometic asserts in its Twentieth Affirmative Defense in its Answer that it "did not owe any duty to Plaintiffs"). Additionally, Dometic asserts as affirmative defenses that its gas absorption refrigerators were not unreasonably dangerous or defective; that they were suitable for their intended purposes; that they were distributed with adequate and sufficient warnings; and that they complied with all applicable laws and regulations. *See id.* at 23 (Fourteenth & Fifteenth Affirmative Defenses).

Dometic contends in its motion for partial summary judgment that Plaintiffs cannot establish that Dometic breached its post-sale duty because it "understood and complied with its recall obligations." [Doc. No. 107 at 33]. Further, Dometic contends that Mr. Kam did not opine whether Dometic violated any of its statutory recall obligations or whether it failed to conduct the recalls in a timely, inclusive, or effective manner. *See id.* Whether Dometic breached its post-sale duty of care is for the jury to determine. The *Daubert* issue is whether Mr. Kam's testimony will assist the jury in deciding that issue.

The Court concludes that Mr. Kam's proposed testimony is sufficiently tied to the facts of the case and will aid the jury in resolving whether Dometic breached its post-sale duty of care. Contrary to Dometic's argument, it would be improper for Mr. Kam to simply state that Dometic violated federal regulations or provisions of the Safety Act. That would be a mere legal conclusion that would not assist the trier of fact in understanding an issue in the case. Mr. Kam, however, may testify based on his experience, skills, and education about his understanding of NHTSA's standards or

practices with respect to recall or retrofit campaigns. His expert testimony "will assist the jury in a specialized area that they are unlikely to already be familiar with, and will not encroach on the Court's duty to instruct the jury on the legal standards." *See, e.g.*, *Martinez v. Cont'l Tire the Americas, LLC*, Case No. 1:17-cv-00922-KWR-JFR, 2020 WL 5943691, at *5 (D.N.M. Oct. 7, 2020) (explaining that "an expert is not prohibited from testifying about the standard of care in his industry merely because federal regulations form part of those standards" and collecting cases); *Raley v. Hyundai Motor Co.*, No. CIV-08-0376-HE, 2010 WL 199976, at *4–5 (W.D. Okla. Jan. 14, 2010) (concluding that those portions of Mr. Kam's expert testimony that go to specialized matters of NHTSA agency practice, rather than a tacit interpretation of legal standards, was permissible, and that Mr. Kam could testify to NHTSA practice and explain NHTSA processes and terminology, in general); *Morris v. Goodyear Tire & Rubber Co.*, No. CIV-03-655-C, 2004 WL 5522851, at *9 (W.D. Okla. Dec. 17, 2004) (reserving determination on the scope and admissibility of Mr. Kam's testimony regarding NHTSA, its investigations, and its relationships with manufacturers (including the duty of manufacturers to report) until trial as it was "not yet clear whether [the defendant] will be pursuing [certain] defenses at trial"); *Fox v. Gen. Motors LLC*, No. 1:17-CV-209-MHC, 2019 WL 3483171, at *10 (N.D. Ga. Feb. 4, 2019) (concluding that Mr. Kam did not opine on the ultimate legal conclusions and that his explanation of the factual background relating to the federal safety standards and his opinion that meeting those standards does

10

not mean the vehicle is without defect was permissible given Kam's background and expertise and collecting cases where Kam's testimony was admitted).[5]

Additionally, the standards of care in the instant action are not conclusively set forth in the federal regulations or statutes because Plaintiffs assert negligence claims in addition to their negligence per se claim in Count 5. *Cf. Johnson v. Gen. Motors Corp.*, 889 F. Supp. 451, 457–58 (W.D. Okla. 1995) (noting that federal law dictates the boundaries of a manufacturer's legal duty with respect to certain aspects of a motor vehicle's design and manufacture, but that state law is permitted to set the standard of care in the exercise of that legal duty). Thus, understanding the applicable recall obligations that Dometic asserts it complied with will be material to the jury in resolving Plaintiffs' negligent recall claim. *See* [Doc. No. 107 at 33].

**B.     Mr. Kam does not offer ultimate legal conclusions on the requirements of the Safety Act.**

Dometic asserts that Mr. Kam's "attempts" to explain the requirements under "the Safety Act (albeit sometimes incorrectly)" are not helpful to the jury, and that the Court should exclude that testimony under *Daubert* because expert witnesses may not give opinions on a question of law. *See* [Doc. No. 106 at 12]. "In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). However, a legal expert may explain "a discrete point of law which is helpful to

---

[5] Additionally, the court in *Fox* determined that Kam's proffered testimony would be useful to the jury in determining what weight to give GM's defense that the vehicle complied with federal safety standards, and that the plaintiff was entitled to present to the jury expert testimony on the meaning of that compliance. *Fox*, 2019 WL 3483171, at *10.

the jury's understanding of the facts," and not all testimony regarding legal issues is excludable. *See id.* at 809–10 (explaining that a witness may assist the jury in understanding the facts in evidence even though references to those facts are couched in legal terms). "To ensure testimony is helpful, '[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion.'" *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)). "[R]eferencing industry standards—some of which are derived from case law—does not constitute improper legal-conclusion testimony.'" *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1268 (D. Colo. 2022).

The Court has reviewed Kam's expert report and concludes that he does not offer ultimate legal conclusions on the requirements of the Safety Act. Rather, Kam's opinions are the product of his personal knowledge and 25 years of experience as a NHTSA enforcement attorney and relate to specialized matters of NHTSA agency practice that a typical juror would not fully understand without expert assistance. The Court finds that Dometic's criticisms of Mr. Kam's methodology are more appropriately directed at the weight of Kam's testimony as opposed to its admissibility. To that end, Dometic is free to challenge Kam's opinions through cross-examination or presentation of its own evidence.

**C.     Mr. Kam's statement in his report that NHTSA "does not make findings of 'no defect'" is not likely to mislead or confuse the jury.**

Dometic contends that Kam's opinions will confuse or mislead the jury "into believing that a safety defect still exists in the recalled refrigerators simply because

12

NHTSA did not make a finding of 'no defect.'" [Doc. No. 106 at 16]. Mr. Kam does not opine that a safety defect still exists in the recalled refrigerators, nor does he opine that Dometic's defect reports were inaccurate or misleading. Rather, he states that NHTSA "does not make findings of 'no defect'" and "does not ordinarily evaluate the truth, accuracy, or completeness of statements made in a Part 573 report." [Doc. No. 106-1 at 12]. The Court believes that a jury is capable of understanding Mr. Kam's testimony and that a jury can make their own decision about whether Mr. Kam's opinions are credible. Further, Dometic is free to cross examine Mr. Kam on these issues. Thus, the Court finds no reason to exclude his testimony on these issues as misleading.

**D.    Mr. Kam's proposed testimony in paragraphs 21 and 22 of his report that NHTSA did not approve or scrutinize the merits of Dometic's remedy pursuant to the recalls is not reliable or relevant, and the Court excludes it.**

Dometic asserts that Mr. Kam's opinions concerning the safety remedy provided as part of the recalls and whether NHTSA approved of the remedy are not relevant or reliable and should be excluded. The Court agrees. Kam's opinions on the safety remedy are included in paragraphs 21 and 22 of his report. *See id.* at 17–18. It is undisputed that Plaintiffs' Refrigerator was not included in the recalls. *See* [Doc. No. 121 at 11–12]. Consequently, the safety remedy provided pursuant to the recalls was not included in Plaintiffs' Refrigerator.[6] Further, it does not appear that Dometic is asserting that NHTSA approved of its safety remedy.

---

[6] As the proponent of the expert testimony, Plaintiffs bear the burden to show it is reliable and relevant, yet Plaintiffs do not respond to Dometic's arguments concerning the admissibility of Mr. Kam's testimony on the safety remedy and NHTSA's approval or lack thereof. *See* Fed. R. Evid. 702; *Nacchio*, 555 F.3d at 1241.

13

Witnesses that rely on experience "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). The Tenth Circuit has explained that when an expert's "conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (citations omitted). Here, Mr. Kam conceded that he could not "say with certainty" that NHTSA did not scrutinize Dometic's remedy, and he confirmed that he did not speak to anyone at NHTSA regarding Dometic's recalls. [Doc. No. 106-7 at 33, 40]. Although the proponent of expert testimony is not required to prove that the expert is indisputably correct, an expert's opinions should "be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (citations omitted).

Here, Mr. Kam's opinion that NHTSA did not scrutinize or approve of Dometic's remedy appears to be based on what Mr. Kam describes as NHTSA's ordinary or typical procedure when there has been no preceding defect investigation. [Doc. No. 106-7 at 33–34]. This opinion is based on speculation rather than on facts that would enable Mr. Kam to accurately conclude that NHTSA did not approve or scrutinize Dometic's remedy, particularly here where Plaintiffs offer nothing in response to Dometic's arguments.

Therefore, the Court finds that Mr. Kam's proffered testimony in paragraphs 21 and 22 of his report is not relevant or reliable, and the Court excludes it.

E.  **Mr. Kam's testimony concerning Dometic's completion rates for the recalls is reliable and relevant.**

Dometic asserts that Kam's opinion that Dometic's completion rates for the recalls were well below average is not relevant and is unreliable. *See* [Doc. No. 106 at 19–22]. Plaintiffs respond that Kam's proposed testimony on Dometic's completion rates is reliable because Kam based his opinions on equipment recalls reported to Congress by NHTSA and Dometic's own public filings. [Doc. No. 113 at 9]. Additionally, Plaintiffs assert that Kam has the specialized knowledge and expertise to conclude that a recall completion rate of less than 50 percent is low. *See id.* Finally, Plaintiffs contend that Dometic's criticisms do not undermine the helpfulness of Kam's testimony to the jury in evaluating NHTSA-related evidence in this case. *See id.* at 10.

Upon review, the Court finds that Dometic's criticisms of Mr. Kam's testimony regarding the recall completion rates is more appropriately directed at the weight of his testimony as opposed to its admissibility. The Court enjoys broad discretion in deciding how to assess an expert's reliability, including what procedures to use in making that assessment, as well as in making the ultimate determination of reliability. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003); *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). Here, the Court is satisfied that Mr. Kam's methodology concerning the completion rates is sufficiently sound and fact-based to

satisfy the reliability requirement under Rule 702. Dometic may reassert its relevance objection to such testimony at trial, if appropriate.

### III. <u>CONCLUSION</u>

Based on the parties' briefing and presentations, the legal standards, and the Court's analysis, the Court GRANTS IN PART AND DENIES IN PART Defendant Dometic Corporation's Motion to Exclude Expert Declaration of Allan J. Kam [Doc. No. 106].

IT IS SO ORDERED this 22nd day of March 2024.

*[signature]*
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE